**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **DEAN PUSHARD,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | **CIVIL ACTION NO. 3:26-cv-00021** |
| **v.** | § | |
| | § | |
| **GALVESTON COUNTY, TEXAS, ANDREW MEJIA, BRET MOREAU, and JEREMY CREECH** | § | |
| | § | |
| | § | |
| | § | |
| ***Defendants.*** | § | |

**DEFENDANT, GALVESTON COUNTY'S AND OFFICER DEFENDANTS MEJIA'S AND MOREAU'S, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE DISTRICT JUDGE JEFFREY V. BROWN:

Defendant, Galveston County (the "County"), and Defendant Deputies Andrew Mejia ("Mejia") and Bret Moreau ("Moreau") (collectively as "Moving Defendants")[1], file their Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"; [Dkt. No. 27]) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in support thereof, respectfully show as follows:

[1] The "Moving Defendants" filing this Motion include all named defendants in the First Amended Complaint except Defendant Jeremy Creech.

# TABLE OF CONTENTS


INDEX OF AUTHORITIES ........ 4

NATURE AND STAGE OF PROCEEDINGS AND ARUMENT SUMMARY ........ 9

STATEMENT OF FACTS ........ 9

I. Call to Scene of Liquor Store Parking Lot and Plaintiff's Arrest ........ 10

II. Allegations of Post-Arrest Conduct ........ 10

III. Evidence Contradicts Plaintiff's Description of Events ........ 11

IV. Plaintiff's specific causes of action against County, Mejia and Moreau ........ 12

ARGUMENT AND AUTHORITIES ........ 13

I. Legal Standard: Burden Under 12(b)(6) ........ 13

II. Excessive Force (Count I), Deliberate Indifference to Serious Medical Need (Count II), and Malicious Prosecution (Count IV) Claims Against Officers Fail ........ 14

A. Qualified immunity law applies to Counts I, II and IV ........ 14

B. The FAC does not plausibly plead objectively unreasonable force or clearly established, fact-specific precedent to defeat qualified immunity ........ 16

*1. No evidence of constitutional violation by excessive force* ........ 16

*2. Qualified immunity is not defeated on the excessive force claim* ........ 19

*3. Injury was de minimus* ........ 21

C. Plaintiff has not plausibly pled subjective deliberate indifference to a serious medical need, and qualified immunity applies (Count II) ........ 21

D. Plaintiff failed to plausibly support his malicious prosecution claim and qualified immunity applies (Count IV) ........ 24

*1. The FAC does not plead nonconclusory facts showing lack of probable cause which is fatal to Count IV* ........ 24

2. *The FAC does not plausibly plead causation* ....................................... 26

3. *No pleading of knowledge/recklessness* .............................................. 26

III. Dismissal is Warranted On Counts V and VI: *Monell* Claims Against the County ........................................................................................................ 27

A. Plaintiff's Section 1983 Action Against the County Fails ........................ 27

B. Official Policy and/or Custom is Insufficiently Alleged .......................... 28

1. *The FAC lacks specificity and similarity required for a pattern* ........ 29

2. *Plaintiff's allegations do not demonstrate sufficient frequency* .......... 30

C. Knowledge of Policy and/or Custom by Policymaker Insufficiently Alleged ........................................................................................................ 31

D. Ratification is Insufficiently Alleged ...................................................... 32

1. *After-the-fact defense ratification fails the Fifth Circuit's "extreme factual situation" and has been rejected in Peterson and this Court* ........................................................................................ 33

2. *Final policymaker pleading is inadequate as to the Chief Deputy, and the Sheriff's involvement is pleaded only as speculation* ............ 34

3. *FAC fails to plead affirmative approval of the deputies' unconstitutional basis for the deputies' actions as required by ratification* ................................................................................... 36

E. Insufficient Allegation of Deliberate Indifference or Moving Force ....... 37

CONCLUSION AND PRAYER ........................................................................ 39

# INDEX OF AUTHORITIES

Cases

*Accord Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) .................... 13

*Albert v. City of Petal*,
819 F. App'x 200 (5th Cir. 2020) .................... 28

*Allen v. Hayes*,
65 F.4th 736 (5th Cir. 2023) .................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) .................... 13

*Austin v. City of Pasadena*,
74 F.4th 312 (5th Cir. 2023) .................... 22

*Board of County Com'rs of Bryan County, Okl. v. Brown*,
520 U.S. 397 (1997) .................... 37

*Bolton v. City of Dallas*,
541 F.3d 545 (5th Cir. 2008) .................... 34

*Brown v. Bryan County*,
219 F.3d 450 (5th Cir. 2000) .................... 34

*Buchanan v. Gulfport Police Dep't*,
530 Fed. Appx. 307 (5th Cir. 2013) .................... 18

*Calhoun v. Hargrove*,
312 F.3d 730 (5th Cir. 2002) (internal citation omitted) .................... 13

*Carmona v. City of Brownsville*,
126 F.4th 1091 (5th Cir. 2025) (quotation omitted) .................... 15, 21

*City of St. Louis v. Praprotnik*,
485 U.S. 112, 127 (1988) .................... 32

*Cloud v. Stone*,
993 F.3d 379 (5th Cir. 2021) .................... 18

*Club Retro, L.L.C. v. Hilton*,
568 F.3d 181, 194 (5th Cir. 2009) .......... 15

*Colle v. Brazos Cnty., Tex.*,
981 F.2d 237 (5th Cir. 1993) .......... 28

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) (citation omitted) .......... 14

*County of Sacramento v. Lewis*,
523 U.S. 833,118 S. Ct. 1708, 1714 n.5 (1998) .......... 28

*Craig v. Martin*,
49 F.4th 404 (5th Cir. 2022) .......... 16

*Davidson v. City of Stafford*,
848 F.3d 384 (5th Cir. 2017) .......... *passim*

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018) .......... 20

*Estate of Davis ex rel. McCully v. City of North Richland Hills*,
406 F.3d 375 (5th Cir. 2005) .......... 37

*Esteves v. Brock*,
106 F.3d 674 (5th Cir. 1997) .......... 28

*Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
330 F.3d 681 (5th Cir. 2003) .......... 24

*Farmer v. Brennan*,
511 U.S. 825, 835 (1994) .......... 22

*Fraire v. Arlington*,
957 F.2d 1268 (5th Cir. 1992) .......... 37

*Fuentes v. Nueces Cnty.*,
689 F. App'x 775 (5th Cir. 2017) (per curiam) .......... 29

*Graham v. Connor*,
490 U.S. 386 (1989) .......... 12, 16, 20

*Harmon v. City of Arlington*,
16 F. 4th 1159 (5th Cir. 2021) .......... 13, 14

*Hicks—Fields v. Harris Cnty.*,
860 F.3d 803 (5th Cir. 2017) .......... 28, 29, 30

*Hodge v. Engleman*,
90 F.4th 840 (5th Cir. 2024) .......... 14

*Hogan v. Cunningham*,
722 F.3d 725 (5th Cir. 2013) .......... 19

*Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*,
379 F.3d 293 (5th Cir. 2004) .......... 27

*Joseph v. Bartlett*,
981 F.3d 319 (5th Cir. 2020) .......... 20

*Malley v. Briggs*,
475 U.S. 335, 341 (1986) .......... 15

*McConney v. City of Hous.*,
863 F.2d 1180 (5th Cir. 1989) .......... 30

*McLin v. Ard*,
866 F.3d 682 (5th Cir. 2017) .......... 26

*Miller v. City of Tex. City*,
No. 3:18-CV-00284, 2019 WL 2189262 (S.D. Tex. 2019) .......... 32, 34, 36

*Monell v. Dept. of Soc. Svcs.*,
436 U.S. 658 (1978) .......... 27

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019) .......... 19

*Mullenix v. Luna*,
577 U.S. 7 (2015) .......... 15, 27

*Peña v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018) .......... 29

*Perdomo v. City of League City*,
765 F. Supp. 3d 613 (S.D. Tex. 2025) .......... 21

*Peterson v. City of Fort Worth, Tex.*,
588 F.3d 838 (5th Cir. 2009) .......... 31

*Pineda v. City of Hous.*,
291 F.3d 325 (5th Cir. 2002) .................... 28

*Piotrowski v. City of Hous.*,
237 F.3d 567 (5th Cir. 2001) .................... 29, 37

*Plotkin v. IP Axess, Inc.*,
407 F.3d 690, 696 (5th Cir. 2005).................... 13

*Poole v. City of Shreveport*,
691 F.3d 624, 629 (5th Cir. 2012) .................... 18

*Pratt v. Harris County*,
822 F.3d 174 (5th Cir. 2016) .................... 18

*Rios v. City of Del Rio, Tex.*,
444 F.3d 417 (5th Cir. 2006) .................... 14

*Saenz v. City of El Paso*,
637 F. App'x 828 (5th Circ. 2016) .................... 31

*Salinas v. City of Houston*,
138 F.4th 822 (5th Cir. 2025) .................... 15

*Sanchez v. Young Cnty.*,
956 F.3d 785 (5th Cir. 2020) .................... 29

*Sessanga v. City of DeSoto*,
No. 24-11050, 2025 U.S. App. LEXIS 26218 (5th Cir. 2025) .................... 24

*Sims v. Griffin*,
35 F.4th 945 (5th Cir. 2022) .................... 22

*Solis v. Serrett*,
31 F.4th 975 (5th Cir. 2022) .................... 19

*Templeton v. Jarmillo*,
28 F.4th 618, 621 (5th Cir. 2022) .................... 20

*Tolan v. Cotton*,
572 U.S. 650, 655-656 (2014) .................... 15

*Tuchman v. DSC Commc'ns Corp.*
14 F.3d 1061 (5th Cir. 1994).................... 13

*Valle v. City of Hous.*,
613 F.3d 536 (5th Cir. 2010) .......... 31,35

*Webster v. Houston*,
735 F.2d 838 (5th Cir. 1984) .......... 31

*Winzer v. Kaufman Cty.*,
No. 3:15-CV-01284-N, 2023 U.S. Dist. LEXIS 43328 (N.D. Tex. 2023) .......... 33,36

*World Wide St. Preachers Fellowship v. Town of Columbia*,
591 F.3d 747, 755 (5th Cir. 2009) .......... 33

*Zarnow v. City of Wichita Falls*,
614 F.3d 161 (5th Cir. 2010) .......... 34

Statutes and Rules

42 U.S.C. § 1983 .......... *passim*

Fed. R. Civ. P. 12 .......... 1, 10

Tex. Penal Code § 38.03 .......... 25

## NATURE AND STAGE OF PROCEEDINGS AND ARGUMENT SUMMARY

This is a Section 1983 action filed in January of 2026 against Galveston County and three officer defendants stemming from Plaintiff's extended stop and public intoxication outside the San Leon Liquor Store on August 8, 2024, leading to his eventual arrest. Movant Defendants moved to dismiss his complaint in April of 2026. Plaintiff filed the FAC on August 4, 2026. Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights. Dkt. 27. All defendants sought and were granted a common deadline to file a responsive pleading of August 25, 2026, and this Motion is timely filed. Dkt. 30.

Plaintiff fails to plead actionable facts, and video evidence contradicts much of his pleading, that any Officer Defendant, (1) used excessive force or (2) was deliberately indifferent to Plaintiff's serious medical needs, (3) maliciously prosecuted him, or (4) demonstrated a clear violation of a clearly established constitutional right to defeat qualified immunity. And, insufficient facts exist to show municipal liability against Galveston County by either custom and practice or ratification. Galveston County and Officers Mejia and Moreau move to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS

This case arises out of Dean Pushard's ("Plaintiff" or "Pushard") August 8, 2024 intoxication outside the San Leon Liquor store leading to arrest by Sergeant Mejia and Deputy Moreau. *See* Ex. A to FAC at 12:01:57; 12:03:00 - 12:05:11.[2]

---

[2] All time references are to those reflected within the video at the top right-hand corner. As demonstrated in Defendants' Motion in the Arguments and Authorities Section I.B below, the

**I. <u>Call to Scene of Liquor Store Parking Lot and Plaintiff's Arrest</u>.**

Plaintiff pled that on August 8, 2024 a "call reported that [he] had been in his truck in a parking lot for approximately two hours since 10:00 a.m. [and] appeared to be falling asleep with his head hitting the horn." (FAC at ¶¶14, 15). Plaintiff alleges that at no point on August 8, 2024 did he make any threatening movement, attempt to flee or actively resist and that he posed no immediate threat to the deputies or anyone else. (FAC at ¶¶24, 33, 42, 162, 165). Per the FAC, Plaintiff was highly intoxicated and "experiencing a multifaceted medical emergency, including a blood-alcohol concentration of 0.4 gm/dl" when Mejia and Moreau arrived on the scene. (FAC at ¶180). Plaintiff further alleges that Sergeant Mejia and Deputy Moreau were deliberately indifferent to Plaintiff's serious medical needs, used excessive force in removing Plaintiff from his truck, and unreasonably seized and maliciously prosecuted Plaintiff, in violation of the First and Fourteenth Amendments. (FAC at ¶¶160, 163, 225, 228, 231).

**II. <u>Allegations of Post-Arrest Conduct.</u>**

Plaintiff also alleges that on August 9, 2024, based on false statements made by Mejia and Moreau in official report(s), Plaintiff was formally charged by the State of Texas with Resisting Arrest, Search, or Transport, and that the charge was dismissed on May 2, 2025 and no other charges were filed. (FAC at ¶¶132, 133). Plaintiff further alleges that he submitted a formal citizen's complaint to the Office of Professional Standards of the

---

Court may consider the video evidence attached in this Motion to Dismiss as it is referred to and central to Plaintiff's claim and Complaint. The video evidence may play a role in a Rule 12(b)(6) analysis. *Allen v. Hayes*, 65 F.4th 736, 742 n. 3 (5th Cir. 2023).

Galveston County Sheriff's Office on July 30, 2025, nearly a year after the August 8, 2024 incident and after the criminal case had already been dismissed. (FAC at ¶¶136, 133). Plaintiff alleges that the Sheriff's Office responded by letter dated October 8, 2025, signed by Chief Deputy Melencio Villarreal, stating that after a thorough review of the citizen complaint packet and available evidence, "the findings of the allegation were EXONERATED." (FAC at ¶139). Plaintiff further alleges that the County's October 8, 2025 exoneration letter constitutes the County's ratification and adoption of Mejia's and Moreau's conduct during the August 8, 2024 incident as official County policy and that the County was the "moving force" behind Plaintiff's alleged injuries. (FAC at ¶¶ 268, 270-272, 276). Plaintiff further alleges a custom and practice by the County of using and tolerating excessive force and manufacturing false resistance narratives by reciting a list of incidents without the specificity, similarity or knowledge allegations required by Fifth Circuit precedent. (FAC at ¶¶ 275, 284, 147).

## III. <u>Evidence Contradicts Plaintiff's Description of Events.</u>

As described in Argument and Authorities Sections II.B. and II.C. herein, Plaintiff's characterization of his resistance and the officers' lack of attention to his medical needs on August 8, 2024 is flatly contradicted by Moreau's body camera and car camera videos in FAC Ex. A and Ex. 1 (Car Cam Video) hereto.[3] As specifically and further set forth below, Plaintiff resisted the officers prior to arrest and was promptly and immediately provided

[3] Generally, FAC Ex. A is video evidence of Moreau's body-cam during initial contact with Plaintiff and arrest and the ambulance ride to the hospital. Moving Defendants attach as Exhibit 1 the following video evidence: Moreau car-cam video during the ride from the hospital to the Galveston County Jail.

medical attention thereafter. (*See e.g*. Ex. A to FAC at 12:02:47 – 12:04:42 (contact and refusal to exit vehicle); Ex. C to FAC 12:03:29-12:04:45 (contact and refusal to exit vehicle); 12:04:50 – 12:04:59 (immediate EMS call); Ex. A to FAC 12:14:35-12:30:00 (EMS arrival and on-sight treatment); Ex A. to FAC 12:31:00-12:58:00 (EMS treatment on transport to hospital); Ex. B to FAC 13:20:00-13:26:44 (in custody examination and treatment at hospital); *see also*, Argument and Authorities Sections II.B. and II.C, below. The video evidence plainly contradicts Plaintiff's pleadings. *Id*.

## IV. Plaintiff's Specific Causes of Action Against County, Mejia and Moreau.

Plaintiff asserts claims under 42 U.S.C. §1983, including a Fourth Amendment excessive force[4] (Count I) and malicious prosecution claim (Count IV) against Mejia and Moreau, a Fourteenth Amendment deliberate indifference to serious medical needs claim against Mejia and Moreau (Count II), and *Monell* liability claims (Counts V and VI) against Galveston County for allegedly ratifying the unconstitutional acts of Mejia, Moreau and Creech and for an allegedly persistent and widespread custom and practice of using and tolerating excessive force and manufacturing false resistance narratives.

[4] Plaintiff's excessive force case is a Fourth Amendment case as "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' . . . should be analyzed under the Fourth Amendment . . . rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis original) (declining to consider a Fourteenth Amendment right).

## ARGUMENT AND AUTHORITIES

### I. Legal Standard: Burden Under 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)); *Accord Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009). A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove,* 312 F.3d 730, 733 (5th Cir. 2002) (internal citation omitted). However, the Court is not required to "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005) (internal citation omitted); *see also, Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994) (stating the court will not accept as true conclusory allegations or unwarranted deductions of fact) (internal citation omitted). While pleaded allegations must generally be accepted as true, that is not the case, at here, when they are "blatantly contradicted" by video evidence. *Harmon v. City of Arlington*, 16 F. 4th 1159, 1164 at n. 2 (5th Cir. 2021).

"A statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient to survive a Rule 12 (b)(6) motion." *Rios v. City of Del Rio,*

*Tex.*, 444 F.3d 417, 421 (5th Cir. 2006). The court must determine whether the facts in the complaint meet the pleading standards and are sufficient to show that the plaintiff has a viable claim for relief. *Iqbal*, 556 U.S. at 678.

The Court may consider video evidence attached hereto as Exhibit 1. While a court "usually may rely on only the complaint and its proper attachments," the Fifth Circuit considers "[d]ocuments that a defendant attaches to a motion to dismiss . . . part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (quotations and citation omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted). As Plaintiff has repeatedly referenced the contents of the body camera and car camera videos in the FAC, and Plaintiff has attached the video recordings and references the content of the same, the Court may consider the full videos associated with the arrest and can adopt video recordings included in the pleadings "over the factual allegations . . . if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## II. Excessive Force (Count I), Deliberate Indifference to Serious Medical Need (Count II), and Malicious Prosecution (Count IV) Claims Against Officers Fail

### A. Qualified immunity law applies to Counts I, II and IV.

Mejia and Moreau have qualified immunity from liability *on all Counts* brought against them, and Plaintiff has the burden of pleading a demonstrable basis that qualified immunity does not apply. Section 1983 claims against government officials are subject to the affirmative defense of qualified immunity, which protects "all but the plainly

incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). Under this defense,

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Salinas v. City of Houston*, 138 F.4th 822, 828 (5th Cir. 2025). "[T]he crux of the qualified immunity test is whether officers have fair notice that they are acting unconstitutionally." *Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam) (quotations omitted). A plaintiff must "assert facts which, if true, would overcome the defense of qualified immunity." *Id.* at 619-20 (quotations omitted).

Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of proof to defeat it through pleading. So, in considering each of his Constitutional claims, addressed in Section II.B through D as follows, the Court must be satisfied that Plaintiff has pled sufficient facts to show (1) that the official violated a constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Tolan v. Cotton*, 572 U.S. 650, 655-656 (2014). A plaintiff "asserting constitutional claims against an officer claiming [qualified immunity] must survive the motion to dismiss without any discovery." *Carmona v. City of Brownsville*, 126 F.4th 1091, 1099 (5th Cir. 2025) (quotation omitted).

**B. The FAC does not plausibly plead objectively unreasonable force or clearly established, fact-specific precedent to defeat qualified immunity.**

***1. No evidence of constitutional violation by excessive force.***

Plaintiff must show that he suffered an injury resulting "directly and only from a use of force that was clearly excessive [and]…clearly unreasonable." *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022). Whether force was excessive or unreasonable depends on the facts and circumstances of the specific case. *Id.* Courts are to evaluate the reasonableness of the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Any constitutional violation must be intentional or done with deliberate indifference; mere negligence will not suffice. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

The FAC generally alleges that Moreau and Mejia used excessive force in several ways: the initial seizure and removal from the truck; three taser deployments applied to remove him from the truck; takedown; two taser deployments to complete handcuffing; facts of rear handcuffing during medical care; and hospital taser "threat" and contact. (FAC at ¶¶ 163-164). Plaintiff characterizes each application as objectively unreasonable because, he alleges, he posed no immediate threat, was not actively resisting and was medically incapacitated. Yet, Plaintiff's allegations are contradicted by his attached video evidence which demonstrates no excessive force as a matter of law.

Moreau's body cam video shows that Moreau instructed Plaintiff to get out of the truck before he was forcibly removed (Ex. A to FAC at 12:03:43); Plaintiff pulled his arms

back from Mejia and Moreau and retracted back into the seat as they tried to remove him from the truck (Ex. A to FAC at 12:03:52); Plaintiff was tased and still resisted, eventually removed from the truck and was taken down to the ground (Ex. A to FAC at 12:04:04); Mejia put one knee on Plaintiff's right buttock area as he and Moreau tried to cuff Plaintiff (Ex. A to FAC at 12:04:04); Plaintiff was cuffed after finally relaxing his hands back (Ex. A to FAC at 12:04:42). All of this involved an individual refusing to respond, sitting in a vehicle while officers have no knowledge of whether a weapon is accessible.

After arrest, Mejia took his knee off of Plaintiff's right buttock area (Ex. A to FAC at 12:04:51); Moreau said they needed EMS and Mejia immediately radioed for EMS (Ex. A to FAC at 12:04:46-12:04:56); Moreau assists Plaintiff to roll over and sit up (Ex. A to FAC at 12:04:56); and Mejia helped Plaintiff remain upright in a seated position and used his own legs as a backrest for Plaintiff (Ex. A to FAC at 12:05:14). Moreau's body cam video further shows that Mejia stayed in that position with Plaintiff for eighteen (18) minutes while EMS rendered aid and, until EMS asked if Mejia and Moreau could stand Plaintiff up (Ex. A to FAC at 12:23:42). When Plaintiff tried to lay down on the pavement, Mejia helped Plaintiff to get back into a seated upright position against Mejia's right leg to support Plaintiff. (Ex. A to FAC at 12:23:40). Moreau's body cam video does not support the allegations in the FAC that Moreau and Mejia "pinned Pushard's shirtless body against the hot pavement under their body weight, kneeling on his buttocks and lower back" and "pressed Pushard's bleeding face further into the pavement" (FAC at ¶36). (*See,* Ex. A to FAC at 12:03:30 – 12:04:56). Looking at the true facts of the case, there was no excessive

force used.

Even ignoring the contradicting evidence, Fifth Circuit precedent has found use of tasers to be reasonable when used on an individual who refused repeated warnings to comply with instructions — *Buchanan v. Gulfport Police Dep't*, 530 Fed. Appx. 307, 313-14 (5th Cir. 2013); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) — and in situations of active resistance, including resistance to handcuffing — *Pratt v. Harris County*, 822 F.3d 174, 182 (5th Cir. 2016); *Cloud v. Stone*, 993 F.3d 379, 385-86 (5th Cir. 2021). Here then, the clearly established law supports taser use.

Applying the legal standards to the facts of this case, Plaintiff was suspected of being under the influence of alcohol and/or other substances and he refused repeated demands to get out of his truck. The FAC alleges Plaintiff said "okay" after the first and second taser shocks; but verbal statements alone do not establish compliance if physical resistance continues. The FAC's written characterization of Plaintiff's conduct as nonresistant, compliant and medically incapacitated cannot be reconciled with the video evidence showing the encounter as it unfolded. His refusal to comply with commands to get out of the truck along with his resistance to his removal from the truck and his resistance to placing his hands behind his back to be cuffed justified the use of force. (*See*, Ex. A to FAC at 12:03:43 – 12:04:42). The taser used on Plaintiff was in drive-stun mode. The use of the taser in drive-stun mode is further evidence that the use of force was not excessive. "A taser in drive-stun mode inflicts a painful electric shock on contact, but does not cause [a] [] seizing effect." *Cloud*, 993 F.3d at 382, n. 2. Plaintiff's pleading, properly construed,

demonstrates no excessive force.

### *2. Qualified immunity is not defeated on the excessive force claim.*

"[O]vercoming qualified immunity is especially difficult in excessive-force cases" because "excessive-force claims often turn on 'split-second decisions' and therefore "the law must be *so* clearly established that—in the blink of an eye, in the middle of a high-speed chase— every reasonable officer would know it immediately." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). This Court must look to "each officer's actions independently to determine whether he is entitled to qualified immunity," *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022), and cannot perform that exercise blindly, based on generalized pleadings. What's more, Plaintiff fails to identify fact-specific, clearly established precedent that would place the unlawfulness of the officers' conduct beyond debate in the particular circumstances alleged or, importantly, in light of the facts demonstrated through attached video. *See*, *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013).

The FAC cites general excessive-force principles and broad propositions ─ that officers may not tase a non-resisting person who poses no threat, may not slam a non-resistant person who poses no threat, and may not continue force after a person is subdued. While Plaintiff says he was confused and disoriented, the FAC does not plead moment-by-moment facts showing what each officer perceived at each escalation point that would allow the Court to assess objective reasonableness from each officer's perspective in real time. That omission matters because, at the qualified-immunity step, it is not enough to cite

general excessive-force principles; the plaintiff must identify precedent that "clearly prohibit[s] the officer's conduct in the particular circumstances before him." *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). The Fifth Circuit (consistent with Supreme Court guidance) requires a close factual fit: existing precedent must place the unlawfulness of the challenged conduct "beyond debate" and "squarely govern[]" the specific facts at issue, with "specificity" being "especially important in the Fourth Amendment context." *Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020); *District of Columbia v. Wesby*,138 S. Ct. 577, 589 (2018).

Moreover, for the qualified immunity inquiry, threat is assessed from the officer's perspective at the time, not with hindsight (*see*, *Graham*, 490 U.S. at 396), and the sequence of events alleged here — commands, simultaneous seizure, pressure-point control, taser deployment — suggests Mejia and Moreau perceived noncompliance or resistance requiring escalation, even if Plaintiff subjectively believed he was complying or was physically unable to comply due to intoxication or medical impairment.

The FAC does not plead facts sufficient to show that no reasonable officer in Mejia's or Moreau's position (1) could have perceived resistance or noncompliance under the specific circumstances alleged, or (2) could have believed the force was lawful under clearly established law at the time of the arrest sequence encounter. Nor does the FAC set forth fact-specific precedent placing the alleged conduct of Mejia and Moreau during the arrest sequence beyond debate.[5]

[5] Allegations regarding rear handcuffing, ambulance transport and hospital conduct are addressed below in connection with Count II.

### *3. Injury was de minimus.*

Finally, Moreau's body cam video reveals EMS officials immediately were called and continually treated Plaintiff and that they considered Plaintiff's facial injuries as a superficial abrasion. (Ex. A to FAC at 12:21:09). "[T]o the extent [plaintiff] suffered any injury as a result of the tasing, it was *de minimis* and arguably cannot support a claim of excessive force. *Buchanan*, 530 F. App'x at 314.

## C. Plaintiff has not plausibly pled subjective deliberate indifference to a serious medical need, and qualified immunity applies (Count II).

For claims involving a Fourteenth Amendment right to medical care, a plaintiff "must allege facts, which, if proved, would show Officers exhibited deliberate indifference" to the plaintiff's serious medical needs. *Carmona v. City of Brownsville*, 126 F.4th 1091,1096-97(5th Cir. 2025). "Deliberate indifference is an extremely high standard to meet"; negligence is not enough. *Id.* at 1097 (quotation omitted). A plaintiff must "plausibly allege that Officers, "(1) w[ere] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) actually drew the inference." *Id.* (quotation omitted).

A medical need must be "so apparent that even laymen would recognize that care is required"—meaning a defendant must have been aware of the severity of the condition, not just that a *potential* for serious harm existed. *Id.* at 1097. There must also be allegations of a refusal to treat, ignoring medical complaints, intentionally providing incorrect treatment, or engaging "in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Perdomo v. City of League City*, 765 F. Supp. 3d

613, 621 (S.D. Tex. 2025). "Under our caselaw, '[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.'" *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022). "A delay in medical care violates the Constitution 'if there has been deliberate indifference [that] *results in substantial harm*.'" *Austin v. City of Pasadena*, 74 F.4th 312, 328 (5th Cir. 2023).

The FAC largely infers subjective intent on the parts of both Mejia and Moreau from outcomes and later medical findings (FAC at ¶180). Subjective knowledge and inference are pleaded in conclusory fashion, e.g., "the need was obvious", Moreau and Mejia "knew Pushard had serious medical needs", rather than concrete facts showing what each deputy actually perceived and concluded. (FAC at ¶¶181, 183, 185). The FAC alleges that Mejia and Moreau refused to move handcuffs from the back to the front, despite EMS requests, Moreau made threats to tase during ambulance transport, Moreau engaged in alleged taser intimidation during cardiac evaluation, and Moreau disregarded suicidal ideation during transport to jail. None of these allegations adequately demonstrate that Mejia or Moreau subjectively knew of a serious medical need and consciously disregarded it; instead, they made decisions based on legitimate security or custodial concerns.

Video shows Mejia called EMS within seconds after Plaintiff was placed in handcuffs, reporting that Plaintiff had been slammed to the ground and had cuts to the face.[6] Plaintiff alleges that EMS arrived and began rendering aid, asked questions and

[6] Moreau's body-cam video shows that Mejia and Moreau immediately called for EMS after removing Plaintiff from the truck and placing him into cuffs, that EMS arrived less than ten

took vitals, and transported Plaintiff to the hospital do not support an inference of deliberate indifference; they support an inference of proper provide care. A decision to secure restraints during medical transport or to warn a non-compliant arrestee during a medical evaluation[7] represent legitimate decisions left to the discretion of officers in the field and hardly constitute deliberate indifference. There is simply no allegation that rises to the level of "deliberate indifference" to a "serious" medical need.[8]

Qualified immunity applies to Moreau and Mejia in Count II as well. The FAC alleges that Moreau transported Plaintiff from the hospital directly to jail despite a hospital discharge order directing that Plaintiff be discharged home (FAC at ¶¶ 110-111, 193), and that during transport Plaintiff expressed suicidal ideation and Moreau took no action. (FAC at ¶¶ 112, 194). The FAC does not allege what specific suicidal statement Plaintiff made (FAC at ¶¶ 112, 194) or what response a reasonable officer would have been required to make under clearly established law. (FAC at ¶ 201). The FAC does not identify clearly established precedent holding that an officer who hears a generalized statement of suicidal ideation during transport must immediately summon mental-health personnel or divert to a mental-health facility rather than transporting the detainee to jail, where intake screening and medical staff are available. (FAC at ¶¶ 194, 201). Moreover, Moreau's car cam video shows that on the ride from the hospital to the jail, (1) Plaintiff was, in fact, in good medical

---

minutes later and neither Mejia nor Moreau interfered with EMS's evaluation or treatment of Plaintiff. (Ex. A at 12:04:46 – 12:04:56; 12:14:23).

[7] (FAC at ¶¶98-106, 192).

[8] There is no allegation that Plaintiff was refused or prevented from receiving medical treatment and certainly no allegations of untreated life-threatening medical issues. (FAC at ¶¶ 65, 86, 88, 90, 93-94, 197).

condition after his arrest and did not complain of a medical need, and (2) Moreau expressed care and concern for Plaintiff's well-being. (Ex. 1 at 16:25:39 – 16:26:40). The FAC fails to describe any medical treatments that were needed but not provided. (FAC at ¶ 197). Nor does the FAC describe any substantial harm caused by any alleged delayed treatment. (FAC at ¶¶ 198, 200). Count II is unsupported and qualified immunity cannot be defeated.

### D. Plaintiff failed to plausibly support his malicious prosecution claim and qualified immunity applies (Count IV).

To state a claim for malicious prosecution under § 1983, plaintiff must plead: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Sessanga v. City of DeSoto*, No. 24-11050, 2025 U.S. App. LEXIS 26218, at *3 (5th Cir. 2025).

#### *1. The FAC does not plead nonconclusory facts showing lack of probable cause which is fatal to Count IV.*

"Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003). "We note that 'the probable cause standards for reasonableness differ from those for qualified immunity.' In this part of the analysis, we are no longer concerned with the fact that there was no probable cause for (plaintiff's) arrest. That mistake alone

cannot open (officer) to liability." *Id*. "Rather, we must look to the facts to determine whether a reasonably competent officer in (officer's) position could reasonably have thought his actions to be consistent with the rights he is alleged to have violated." *Id*.

Plaintiff alleges his initial booking and detention on August 8, 2024 and subjection to the criminal court system for nine months constitutes a "seizure". (FAC at ¶¶226, 246-247). Plaintiff's malicious prosecution theory depends on the premise that Mejia and Moreau "manufactured" probable cause by falsely describing "resistance". Yet, the video footage shows Plaintiff physically resisted— refused commands to exit the truck, pulled his arms back, and resisted handcuffing (Exhibit A at 12:03:43 – 12:04:46) — there is independent, objective probable cause to believe he committed a resisting-arrest offense.[9] Accordingly, Plaintiff cannot plausibly plead the absence of good cause for his seizure and Plaintiff has failed to plead nonconclusory facts sufficient to show that no reasonable officer could have perceived resistance or noncompliance under the specific circumstances alleged. Even assuming, arguendo, some characterization in the reports was disputed, the prosecutor's charging decision would have been supported by the same video-confirmed resistance.

The FAC alleges that if false statements are erased and omissions included, probable cause disappears, and that a truthful account would show involuntary pain responses and medical incapacity.[10] This materiality allegation is pleaded as an unsupported conclusion

---

[9] A resisting arrest offence requires using force to obstruct an officer's arrest/transport. TEX. PENAL CODE §38.03. It is no defense to prosecution under this section that the arrest was unlawful. *Id*.

[10] Even if the Court were to accept Plaintiff's characterization that his conduct was entirely involuntary and pain-responsive, the charging authority's decision to file the resisting-arrest charge

("corrected narrative" would negate probable cause) without pleading what the corrected narrative would be in sufficient detail to permit the Court to test probable cause.

### *2. The FAC does not plausibly plead causation.*

Causation is also pleaded in a conclusory, generalized way without factual detail connecting the alleged misstatements to the prosecutor's decision. Plaintiff alleges Moreau caused the criminal legal process by arresting and booking Plaintiff and submitting charge paperwork and a false resistance narrative, and that Mejia supplied and adopted the same false resistance narrative in his supplemental report. (FAC at ¶¶ 228-229). The FAC alleges that the charging authority relied on the charge paperwork, officer communications, officer reports, and resistance narrative supplied by Moreau and Mejia (FAC at ¶ 230), and claims "on information and belief", that the State dismissed charges after reviewing body-cam footage. (FAC at ¶ 248). However, Plaintiff did not allege that the State had no access to the body-worn camera footage, or that Moreau or Mejia somehow concealed footage from the charging authority prior to bringing charges. Absent that, the reasonable inference is body-cam video is (and/or was) available and that independent decisions paved the way for Plaintiff's charges.

### *3. No pleading of knowledge/recklessness.*

Plaintiff's allegations regarding Mejia's and Moreau's states of mind are conclusory

---

would not necessarily lack probable cause. It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation, insulating the initiating party. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017); *Sessanga*, 2025 U.S. App. LEXIS 26218 at *2 (applying doctrine to malicious prosecution).

and fail to meet the pleading standard. The FAC characterizes Mejia's and Moreau's reports as containing fabrications but does not allege, for example, that Mejia and Moreau possessed information contradicting their reports at the time the reports were submitted, or that they had obvious reasons to doubt the accuracy of their characterizations. Without such factual allegations, the assertion that Mejia and Moreau fabricated evidence with malice amounts to a conclusory legal conclusion.

Absent well-pleaded, specific facts showing a material fabrication necessary to probable cause, the Court cannot conclude from the face of the FAC that Mejia or Moreau violated clearly established law in the required specific context. *Mullenix*, 577 U.S. 7. Count IV should be dismissed.

## III. Dismissal is Warranted On Counts V and VI: *Monell* Claims Against the County.

Plaintiff pleads Fourth and Fourteenth Amendment violations made actionable under 42 U.S.C. § 1983 ("Section 1983") and various summarily alleged policies, customs ratifications or failures by the County. Based on Plaintiff's inadequate pleading, the County should be dismissed from this action.

### A. Plaintiff's Section 1983 Action Against the County Fails.

A governmental entity such as the County can only be held liable if there is either an unconstitutional action by official policymakers or a policy or custom that caused the deprivation of a constitutional right. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 694 (1978); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). The County cannot be vicariously liable for alleged actions of

employees under Section 1983. *Pineda v. City of Hous*., 291 F.3d 325, 328 (5th Cir. 2002) ("Section 1983 offers no *respondeat superior* liability."). Before Plaintiff can state a claim under Section 1983, he must allege facts which identify federally protected conduct upon which some defendant infringed. *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 1714 n.5 (1998). Plaintiff's pleadings fail to demonstrate that any constitutional right of Plaintiff was violated. Absent that, claims against the County fail as there can be no municipal liability under *Monell* in the absence of any underlying constitutional violation. *Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020).

The Fifth Circuit interprets *Monell* as requiring a plaintiff to identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Hous*., 291 F.3d 325, 328 (5th Cir. 2002); *see also Hicks—Fields v. Harris Cnty*., 860 F.3d 803, 808 (5th Cir. 2017).

**B. Official Policy and/or Custom is Insufficiently Alleged.**

An "official policy or custom" giving rise to liability pursuant to *Monell* may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997). However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty*., Tex., 981 F.2d 237, 245 (5th Cir. 1993). To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' . . . a plaintiff must do

more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). Plaintiff alleges a multi-faceted custom involving excessive force, false documentation, failure to intervene, and deficient accountability. Yet, the FAC does not plead nonconclusory facts demonstrating that any of the practices was so persistent and widespread as to have the force of law.

***1. The FAC lacks specificity and similarity required for a pattern.***

To prove the existence of a custom Plaintiff must show “a pattern of abuses that transcends the error made in a single case.” *Piotrowski v. City of Hous.*, 237 F.3d 567, 582 (5th Cir. 2001). “A successful showing of such a pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.” *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017). “In addition to similarity and specificity, a pattern must be comprised of ‘sufficiently numerous prior incidents’ rather than merely ‘isolated instances.’” *Fuentes v. Nueces Cnty.*, 689 F. App’x 775, 778 (5th Cir. 2017)(per curiam). “Showing a pervasive pattern is a heavy burden.” *Sanchez v. Young Cnty.*, 956 F.3d 785, 793 (5th Cir. 2020).

Plaintiff alleges the existence of ten incidents spanning more than two decades, involving different deputies, factual circumstances, types of force, and alleged violations. Four were alleged in-jail incidents (Perales, Mitchell, Baltz, and Calloway). The alleged out-of-jail incidents include a traffic stop (Jones), a civil-dispute (Oliphant), a school vaping incident (Williams), a traffic stop with body-camera disconnection (Sanyal), and two events involving post-arrest contact (Khaled and Chizer). Even if force applied in

Plaintiff's arrest could be considered constitutionally excessive, the incidents cited in the FAC are not sufficiently similar to Plaintiff's case. Several incidents involve resisting or combative individuals, not people alleged to have been medically incapacitated or "welfare-check" subjects. Plaintiff includes situations with different types of force applied in different contexts. The Fifth Circuit has repeatedly held that prior incidents must be similar and specific to the violation alleged, not merely examples of a bad act. [11] Here, Plaintiff's catalog of incidents lacks the factual similarity necessary to establish a pattern of the specific constitutional violation he alleges.

Plaintiff's characterization of the alleged custom—using excessive force against nonthreatening persons, manufacturing resistance narratives to justify that force, failing to intervene, tolerating those practices through exoneration, and the absence of corrective training or supervision—is broad and conclusory. The Fifth Circuit requires that Plaintiff plead specific facts showing a pattern of abuses that transcends the error made in a single case. Plaintiff has not done so. At most, Plaintiff has alleged that the County's Sheriff's Office deputies have, on few isolated occasions over nearly two decades, been accused of using too much force. That does not plausibly allege a County-wide custom tantamount to official policy.

***2. Plaintiff's allegations do not demonstrate sufficient frequency.***

A pattern requires sufficiently numerous prior incidents, as opposed to isolated incidents. *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989). Plaintiff recites

[11] *See* e.g., *Hicks-Fields*, 860 F.3d at 810.

ten incidents over twenty years involving different types of force, different settings, different deputies, and different alleged failures. Plaintiff does not allege the size of the Galveston County Sheriff's Office, how many total use-of-force incidents occurred during that period, how many involved similar fact patterns, the number of citizen complaints filed, how many were reviewed and approved, or how many resulted in discipline. Without this context, the Court cannot assess whether ten incidents over nearly two decades constitute a persistent, widespread practice or isolated occurrences. *See Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Circ. 2016) ("[w]ithout further context surrounding the circumstances, the allegations of prior shootings do not plausibly suggest a pattern of abuses to which the City was deliberately indifferent."); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (finding that twenty-seven instances of alleged excessive force over four years was insufficient where context was lacking). Plaintiff provides no such context. Absent that context, the pleaded incidents do not plausibly demonstrate a pattern tantamount to official policy.

**C. Knowledge of Policy and/or Custom by Policymaker Insufficiently Alleged.**

A plaintiff must show "[a]ctual or constructive knowledge of [a] custom" that is "attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority." *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *see also Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010). Plaintiff alleges that the prior incidents, formal citizen complaints, Internal Affairs and OPS case files, use-of-force reports, video evidence, supervisory reviews, disciplinary recommendations, and

final dispositions gave the Sheriff and the Sheriff's Office actual knowledge of the custom. Plaintiff further alleges that the Sheriff personally overruled the recommendation to terminate Creech.

These allegations are conclusory. Plaintiff does not allege that the Sheriff or any final policymaker reviewed various incidents, identified a pattern of similar constitutional violations, and consciously chose to ignore alleged problems. Plaintiff does not allege that the incidents were presented to the Sheriff as a pattern requiring policy intervention. Plaintiff does not allege that the County's final policymakers were aware that the alleged custom was substantially certain to result in the specific type of constitutional violation Plaintiff allegedly suffered. Reinstatement after the 2005 Mitchell incident is insufficient standing alone to demonstrate knowledge of a County-wide custom in 2024. Plaintiff must plead facts showing that the County's policymakers were on notice of a persistent pattern of similar violations and consciously disregarded that pattern. The FAC does not do so.

### D. Ratification is Insufficiently Alleged.

Ratification is a theory of liability in which a subordinate's decision that is expressly approved by an employee with policymaking authority could be deemed to be the policy of the policymaker. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A ratification claim is appropriate in only "extreme factual situations." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017). For example, neither a policymaker who simply goes along with a subordinate's decision, nor a failure to investigate gives rise to liability. *Miller v. City of Tex. City*, No. 3:18-CV-00284, 2019 WL 2189262, at *5 (S.D.

Tex. 2019) (citations omitted). A municipality does not necessarily incur liability even where the policymaker defends conduct later shown to be unlawful. *Id*. Plaintiff's allegations of after-the-fact defense do not plead the "extreme factual situation", which may include an "obvious violation of clearly established law", that the Fifth Circuit requires for a ratification claim. *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

#### *1. After-the-fact defense ratification fails the Fifth Circuit's "extreme factual situation" and has been rejected in Peterson and this Court.*

The only alleged "ratification" pleaded by Plaintiff is after-the-fact ratification; specifically, an October 8, 2025 post-incident exoneration letter[12] issued in response to a July 30, 2025 citizen complaint — long after the August 8, 2024 event and after the resisting-arrest prosecution had already been dismissed on May 2, 2025. (*See*, FAC at ¶¶ 136-137, 139, 256, 259, 263). The "extreme factual situation" exception permitting ratification liability has an "extremely high" bar. *Winzer v. Kaufman Cty.*, No. 3:15-CV-01284-N, 2023 U.S. Dist. LEXIS 43328, at *18 (N.D. Tex. 2023); *Davidson*, 848 F.3d at 395. Count V attempts to meet that standard by alleging misconduct by Mejia, Moreau and Creech, and concluding such misconduct "constituted an obvious constitutional violation and the manufactured basis used to justify it, despite objective evidence contradicting that basis". (FAC at ¶¶260, 267, 269). But the ratification inquiry is not whether the underlying incident was severe; rather, an authorized policymaker must have approved the

---

[12] Plaintiff refers to this letter throughout the FAC as "the Exonerated disposition". *See*, *e.g.*, FAC at ¶¶ 256, 259, 270.

subordinate's decision and its unconstitutional basis. *Davidson*, 848 F.3d at 395-396; *Miller*, No. 3:18-CV-00284, 2019 WL 2189262 at *5 - *6; *Milam v. City of San Antonio*, 113 F. App'x 622, 627 (5th Cir. 2004)("[A]ny violation must be causally traceable to [policymakers], not just to their subordinates."). Moreover, allegations that a municipality has defended officer action later determined to be a violation do not support ratification. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). Plaintiff's "ratification" allegations are insufficient under Fifth Circuit precedent.

***2. Final policymaker pleading is inadequate as to the Chief Deputy, and the Sheriff's involvement is pleaded only as speculation.***

"[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000). However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008). The complaint alleges the Sheriff is the final policymaker for law enforcement and disciplinary matters. (FAC at ¶¶254, 270). But the only concrete fact pleaded about the exoneration decision is that the letter was signed by the Chief Deputy, not the Sheriff. (FAC at ¶256). The FAC asks the Court to infer either that the Sheriff reviewed and approved the exoneration or that the Sheriff delegated final authority to an "authorized designee", i.e., the Chief Deputy. (FAC at ¶255-256).

Plaintiff alleges that GCSO Policy Manual Section GC.11 requires findings to be forwarded "to the Sheriff or his or her designee for information, review, comment, and

final disposition," and that the Sheriff or designee may "accept the findings or remand the case for additional investigation." (FAC at ¶¶140, 255). These allegations confirm that the Sheriff retains ultimate authority and that the Chief Deputy's role is derivative and delegated. Plaintiff alleges no facts showing that the Sheriff delegated final, unreviewable policymaking authority to the Chief Deputy by written instrument, board resolution, or other formal delegation, regarding exoneration decisions, internal affairs findings, or policy ratification, or that the Sheriff lacked authority to review, modify, or reject the Chief Deputy's exoneration decision. Without such allegations, the Chief Deputy's signature on the exoneration letter does not establish final policymaker status.

Even if Plaintiff had alleged facts showing the Chief Deputy possessed some delegated authority, Plaintiff has not alleged facts showing that such delegation was final and unreviewable. If the Sheriff retained the authority to review, modify, or reject the Chief Deputy's exoneration decision, then the Chief Deputy's decision would not constitute final municipal policy. The Complaint is completely silent on this critical point, leaving Plaintiff's delegation theory entirely speculative. Because single-incident municipal liability is "extremely narrow" and requires action by a final policymaker, pleading by inference without supporting facts about delegation (who delegated, when, by what instrument, and with what scope) is insufficient. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). And because final decision-making authority is not the same as final policy-making authority, and municipal liability turns on the latter, the mere fact that a Chief Deputy signed a letter does not plausibly establish final policymaker status. *Id.*

### 3. *FAC fails to plead affirmative approval of the deputies' unconstitutional basis for the deputies' actions as required for ratification.*

To plead ratification, Plaintiff must plausibly allege that an authorized policymaker approved both the deputies' decisions and the unconstitutional basis for those decisions. *Davidson*, 848 F.3d at 395-396; *Miller*, No. 3:18-CV-00284, 2019 WL 2189262 at *5 - *6. Count V relies on the conclusory assertion that the County adopted the deputies' conduct by issuing an exonerated finding after a thorough review in response to Plaintiff's formal citizen's complaint. (FAC at ¶¶253, 259, 263-264)[13]. But the FAC does not plead what specific findings were made, what standards were applied, who actually reviewed the evidence, what evidence was actually reviewed by policymaker, what conclusions were reached about the deputies' justification, or how the exoneration necessarily constitutes approval of the unconstitutional basis for the deputies' actions (as opposed to a determination — right or wrong — about policy compliance). (FAC at ¶¶259, 255-256). It is clear that in the Fifth Circuit, ratification requires more than a later determination that no discipline is warranted; that kind of after-the-fact approval is generally not enough absent an extreme scenario. *Davidson*, 848 F.3d at 395-396; *Miller*, No. 3:18-CV-00284, 2019 WL 2189262 at *5 - *6; *Winzer*, No. 3:15-CV-01284-N, 2023 U.S. Dist. LEXIS 43328, at *14-15. Without pleaded facts identifying who actually reviewed the evidence, what conclusions were reached about the deputies' justifications, and how that constitutes approval of an unconstitutional basis, no plausible inference can be made more definitively than pure speculation.

### E. Insufficient Allegation of Deliberate Indifference or Moving Force

Deliberate indifference requires Plaintiff to allege a County official is aware of facts from which an inference of substantial risk of serious harm could be drawn and that he actually drew that inference. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381–82 (5th Cir. 2005). Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997); *Piotrowski*, 237 F.3d at 581. To meet the "moving force" element, a plaintiff is required to show a direct causal connection between the policy and the deprivation, which is more than a mere "but for" coupling. *Fraire v. Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

The FAC's recitation of GC.11's procedural requirements ─ maintaining complaint logs, conducting audits, providing annual summaries ─ does not plausibly allege that any County policy was the moving force behind Plaintiff's injuries. Plaintiff does not allege that these administrative functions caused or contributed to the alleged constitutional violations on August 8, 2024, or that the County used said administrative functions to

[13] The FAC characterizes Mejia's September 1, 2024 approval as ratification or as evidence of deliberate indifference. (FAC at ¶¶134-135). This is garden-variety supervisory review, not final policymaking. Plaintiff does not allege that Mejia possessed final policymaking authority over use-of-force standards for the County, that the Sheriff delegated such authority to Mejia, or that Mejia's approval constituted unreviewable County policy. Without such allegations, Mejia's supervisory approval cannot constitute ratification; and, even if it could be so construed, Plaintiff has failed to plead the "extreme factual situation" required by Fifth Circuit precedent. The FAC alleges no facts showing that Mejia approved an obvious constitutional violation or that he endorsed the unconstitutional basis for the force used. Approval of a use-of-force report after the fact, even if mistaken, does not rise to the level of affirmative approval of unconstitutional conduct necessary for ratification liability.

identify a pattern of unconstitutional conduct and then consciously disregarded it. Nor does Plaintiff allege that the County's maintenance of complaint records, audit procedures or trend-tracking demonstrated deliberate indifference to a known risk of constitutional harm. Plaintiff alleges, in conclusory fashion, that the County "made repeated deliberate choices to tolerate the custom" by failing to impose meaningful discipline, require corrective retraining, or conduct reviews calculated to identify and stop recurring violations. Plaintiff does not allege which policymaker made these choices, when, or based on what information. Plaintiff does not allege that any final policymaker reviewed the alleged pattern of violations and consciously chose to do nothing. The allegation that the Sheriff reinstated Creech in 2005, standing alone, does not demonstrate deliberate indifference to a County-wide custom in 2024. The FAC must plead specific facts showing that the Sheriff or another final policymaker identified a pattern of similar constitutional violations and made a conscious decision to tolerate it. The FAC does not do so.

Plaintiff's own reliance solely on post-arrest conduct defeats "moving force" causation for the core injuries: the alleged excessive force, medical-care obstruction and hospital conduct occurred on August 8, 2024, while the exoneration letter issued on October 8, 2025. (FAC ¶¶137, 139). Plaintiff also alleges the resisting-arrest prosecution was dismissed on May 2, 2025 (FAC at ¶133), more than five (5) months before the exoneration letter issued; as such, the exoneration letter could not plausibly be the "moving force" behind the pendency of that prosecution. At most, the exoneration is a post hoc

"defense" or endorsement after the fact, which the Fifth Circuit treats as insufficient to establish ratification liability. *Davidson*, 848 F.3d at 395-396.

**CONCLUSION AND PRAYER**

FOR THESE REASONS, Defendant Galveston County, Texas, and Defendant Officers Andrew Mejia and Bret Moreau, respectfully request that the Court (1) dismiss Plaintiff's claims against Galveston County, Texas, with prejudice, (2) dismiss Plaintiff's claims against Andrew Mejia and Bret Moreau, with prejudice, and (3) for such other and further relief in law and in equity to which the Moving Defendants may be justly entitled.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By: */s/ Joseph R. Russo, Jr.*

**Joseph R. Russo, Jr.**
Federal I.D. No. 22559
State Bar No. 24002879
jrusso@greerherz.com
**Jennifer J. Nobley**
Federal I.D. No. 2303251
State Bar No. 24066557
jnobley@greerherz.com
123 Rosenberg Street, Suite 3000
Galveston, Texas 77550
(409) 797-3200 (Telephone)
(866) 422-4352 (Fax)

**ATTORNEYS FOR DEFENDANTS GALVESTON COUNTY AND OFFICER DEFENDANTS MEJIA AND MOREAU**

**CERTIFICATE OF SERVICE**

I hereby certify on the 25th day of August, 2026, a true and correct copy of the foregoing was served upon all counsel of record in this case via the court's ECF system:

Heather Minette Schutmaat
MINETTE LAW, PLLC
P.O. Box 369
Kemah, Texas 77565
***heather@minettelaw.com***

Bryan R. Lasswell
Genevieve Bacak McGarvey
McLeod, Alexander, Powel & Apffel, P.C.
802 Rosenberg – P.O. Box 629
Galveston, Texas 77553
***brlasswell@mapalaw.com***
***gbmcgarvey@mapalaw.com***

*/s/ Joseph R. Russo, Jr.*
Joseph R. Russo, Jr.